Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/22/2020 09:08 AM CST

**State of Nebraska, appellee, v.
Jeremy J. Nollett, appellant.**

___ N.W.2d ___

Filed December 15, 2020.    No. A-20-323.

1. **Pleas: Appeal and Error.** Prior to sentencing, the withdrawal of a plea
   forming the basis of a conviction is addressed to the discretion of the
   trial court, and its ruling will not be disturbed on appeal absent an abuse
   of that discretion.
2. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court.
3. **Pleas.** After the entry of a plea of guilty or no contest, but before sen-
   tencing, a court, in its discretion, may allow a defendant to withdraw his
   or her plea for any fair and just reason, provided that the prosecution has
   not been or would not be substantially prejudiced by its reliance on the
   plea entered.
4. **Pleas: Appeal and Error.** The right to withdraw a plea previously
   entered is not absolute, and, in the absence of an abuse of discretion on
   the part of the trial court, refusal to allow a defendant's withdrawal of a
   plea will not be disturbed on appeal.
5. **Pleas: Proof.** The burden is on the defendant to establish by clear and
   convincing evidence the grounds for withdrawal of a plea.
6. **Due Process: Presentence Reports: Notice.** A court does not violate a
   defendant's due process rights by considering information in a presen-
   tence report when the defendant had notice and an opportunity to obtain
   access to the information in the report and to deny or explain the infor-
   mation to the sentencing authority.
7. **Courts: Sentences.** A sentencing court has wide latitude and discretion
   to impose any sentence within the statutory limits.
8. **Courts: Sentences: Evidence.** The sentencing court has broad discre-
   tion as to the source and type of evidence and information which may
   be used in determining the kind and extent of the punishment to be

imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.

9. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. The sentencing court is not limited to any mathematically applied set of factors.

10. \_\_\_\_. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Buffalo County: Ryan C. Carson, Judge. Affirmed.

Charles R. Maser for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

Jeremey J. Nollett appeals his plea-based convictions of third degree sexual assault of a child and attempted incest. On appeal, he alleges that the district court erred in denying his motion to withdraw his pleas and raises several issues related to his sentences. We affirm.

## BACKGROUND

Nollett was originally charged with first degree sexual assault of a child and incest. Pursuant to a plea agreement with the State, he pled no contest to amended charges of third degree sexual assault of a child and attempted incest. According to the factual basis provided by the State at the plea hearing, on December 14, 2018, officers with the Buffalo County

Sheriff's Department and the Ravenna Police Department were contacted regarding a possible sexual assault of a child. Staff at Ravenna High School provided information that the victim, A.V., was 14 years old or younger at the time and reported that she had been sexually assaulted by her stepfather, Nollett, who was born in 1977.

A.V. underwent a forensic interview, and she disclosed that Nollett would come into her bedroom in the early morning hours before school and after A.V.'s mother had left for work. A.V. reported that during that time, Nollett would fondle her breasts and vaginal area and subject her to digital and penile penetration. These events occurred on several different occasions between September 1 and December 4, 2018, while the family lived in Buffalo County. After A.V.'s disclosure, DNA testing was completed, and the testing concluded that Nollett's DNA profile could not be excluded as a potential source of the DNA from the sexual assault kit that was gathered during A.V.'s forensic interview. After hearing the factual basis, the district court accepted Nollett's pleas.

Thereafter, Nollett filed a motion to withdraw his pleas. The court held a hearing on the motion, and the evidence established that the plea offer from the State was first communicated to Nollett, through his counsel, in October 2019. On January 5, 2020, Nollett and his counsel first discussed the results of the DNA testing that had been completed. The following day, Nollett's counsel contacted the county attorney to ask whether the plea offer was still available. The county attorney responded that the offer would remain open until the time of the hearing set for the following day.

Nollett testified that he understood that if he proceeded to trial on the original charges, he was facing a mandatory minimum sentence of 15 years' imprisonment, but if he accepted the plea offer, he faced a maximum sentence of 6 years' imprisonment. Nevertheless, Nollett explained that he was under a great deal of stress at that time, and, given the results of the DNA testing and the mandatory minimum sentence he could

face, he felt compelled to accept the plea offer. He admitted, however, that since that time, he has had second thoughts.

The district court found that Nollett failed to provide clear and convincing evidence that would support allowing him to withdraw his pleas; therefore, the court denied the motion. Nollett was later sentenced to 2 years' imprisonment and 18 months' postrelease supervision on each count with the terms to run consecutively. He received credit for 116 days served. Nollett appeals.

## ASSIGNMENTS OF ERROR

Nollett assigns, renumbered, that the district court erred in (1) denying his motion to withdraw his pleas, (2) considering polygraph test results at sentencing, (3) failing to consider all mitigating factors at sentencing, and (4) sentencing him to incarceration as opposed to probation.

## STANDARD OF REVIEW

[1] Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

[2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

## ANALYSIS

Nollett first argues that the district court erred in denying his motion to withdraw his pleas. We find no abuse of discretion in the denial of Nollett's motion.

[3-5] After the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion, may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered.

*State v. Ortega, supra*. The right to withdraw a plea previously entered is not absolute, and, in the absence of an abuse of discretion on the part of the trial court, refusal to allow a defendant's withdrawal of a plea will not be disturbed on appeal. *Id*. The burden is on the defendant to establish by clear and convincing evidence the grounds for withdrawal of a plea. *Id*.

In the present case, Nollett argues that there were fair and just reasons to allow him to withdraw his pleas of no contest. Specifically, he acknowledges that he had known about the plea offer for some time, but he claims that he was "under a great deal of stress" and unsure whether to accept the offer. Brief for appellant at 19. He argues that he felt pressured by the expiration deadline for the plea offer and did not have sufficient time or opportunity to consider his options.

As the district court observed, Nollett was first presented with the plea offer in October 2019, almost 3 months prior to its ultimate expiration date, and the court therefore determined that Nollett had had "plenty of time" to consider the offer. Nollett claims that he felt pressured to make a decision, noting his choices of serving up to 6 years' imprisonment if he accepted the plea offer or risking a conviction after trial for which he would face a mandatory minimum of 15 years' imprisonment. But those choices would not have changed regardless of how much time Nollett had to decide whether to accept the plea offer.

In addition, at the plea hearing, Nollett confirmed that he understood the plea agreement and that he had enough time and opportunity to discuss it with his counsel. He could have requested additional time at that time, but he did not do so. We further note that in his reply brief, under a different argument section, Nollett admits that when confronted with the possibility of a mandatory minimum of 15 years' imprisonment or accepting the plea and facing a maximum of 6 years' imprisonment, "[W]ho is not going to take that deal?" Reply brief for appellant at 19. Thus, he understood the choices presented

to him, and additional time to consider the plea offer would not change those choices.

At the hearing on his motion to withdraw his pleas, Nollett testified that he felt compelled to accept the plea offer at the time he did so, but that since that time, he has had second thoughts. However, the fact that Nollett changed his mind is an insufficient basis upon which to withdraw a plea. See *State v. Havlat*, 221 Neb. 845, 381 N.W.2d 144 (1986) (other than fact he changed his mind, defendant offered no credible evidence to support withdrawing plea). See, also, *U.S. v. Bastian*, 603 F.3d 460 (8th Cir. 2010) (mere fact that defendant changed his mind is not fair and just reason to allow him to withdraw plea). Based on the foregoing, we conclude that the district court did not abuse its discretion in finding that Nollett failed to meet his burden of establishing that he should be permitted to withdraw his pleas.

Nollett also assigns that the district court erred in considering the results of the polygraph test at sentencing. We disagree.

We first note that in the instant case, Nollett did not object to the court's mention of the polygraph test at the sentencing hearing. Additionally, he does not argue that any references to the polygraph test should not have been included in the presentence investigation report (PSR); rather, he claims that the court erred in relying on the polygraph test at sentencing. There are few details regarding the polygraph test in our record. The PSR references that the polygraph test indicated that Nollett was not truthful when he denied subjecting A.V. to penile penetration. And at sentencing, the district court simply stated that there were allegations that Nollett had not been truthful on his polygraph test.

[6] The statute outlining presentence investigations provides that the presentence investigation and report shall include any matters that the probation officer deems relevant. See Neb. Rev. Stat. § 29-2261(3) (Cum. Supp. 2018). PSR's have a particularly established role in the sentencing process. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). We have

recognized that these reports are essential to a court's enlightened and just sentencing. *Id*. And a court does not violate a defendant's due process rights by considering information in a PSR when the defendant had notice and an opportunity to obtain access to the information in the report and to deny or explain the information to the sentencing authority. *Id*.

Here, Nollett had access to information surrounding the polygraph test and his counsel confirmed at the outset of sentencing that he and Nollett had reviewed the information contained in the PSR. Because the PSR contained references to the polygraph test, the district court did not err in considering this information at sentencing.

[7] Furthermore, a trial judge has broad discretion in the source and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Hurd*, 307 Neb. 393, 949 N.W.2d 339 (2020) (quoting *State v. Rapp*, 184 Neb. 156, 165 N.W.2d 715 (1969)). Highly relevant, if not essential, to the determination of an appropriate sentence is the gaining of knowledge concerning the defendant's life, character, and previous conduct. *Id*. In gaining this information, the trial court may consider reports of probation officers, police reports, affidavits, and other information including his or her own observations of the defendant. *Id*. A presentence investigation has nothing to do with the issue of guilt. *Id*. The rules governing due process with respect to the admissibility of evidence are not the same in a presentence hearing as in a trial in which guilt or innocence is the issue. *Id*. The latitude allowed a sentencing judge at a presentence hearing to determine the nature and length of punishment, other than in recidivist cases, is almost without limitation as long as it is relevant to the issue. *Id*. Thus, a sentencing court has wide latitude and discretion to impose any sentence within the statutory limits. *Id.*

[8] Polygraph results are generally inadmissible as unduly prejudicial. *State v. Castaneda*, 287 Neb. 289, 842 N.W.2d 740 (2014). However, the sentencing phase is separate and apart

from the trial phase, and the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of the sentence. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). See, also, Neb. Rev. Stat. § 27-1101(4)(b) (Reissue 2016) (Nebraska Evidence Rules, other than those with respect to privileges, do not apply at sentencing). The sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Pullens, supra*.

In the present case, the fact that a polygraph test indicated that Nollett was untruthful when he denied sexually assaulting A.V. could indicate that he did, in fact, commit the crimes of which he was accused. But at sentencing, guilt is not an issue. Nollett had already been convicted of sexually assaulting A.V., and the record is replete with his protestations of innocence. So the fact that he maintained his innocence during the polygraph test is not surprising, nor is it any more prejudicial than his statements to that effect, which are contradicted by the results of the DNA test. In other words, he claimed to be innocent during the polygraph test, but the test indicated otherwise; likewise, he repeatedly claims to be innocent now, but the DNA testing indicates otherwise. Consequently, we find no error in the court's reliance on the polygraph test at sentencing.

In his final assigned errors, Nollett challenges his sentences, arguing that the district court failed to consider all mitigating factors at sentencing and should have sentenced him to probation rather than incarceration. We find no abuse of discretion in the sentences imposed.

Third degree sexual assault of a child and attempted incest are both Class IIIA felonies, punishable by up to 3 years' imprisonment and 9 to 18 months' postrelease supervision if imprisonment is imposed. Neb. Rev. Stat. §§ 28-320.01, 28-201, 28-703, and 28-105 (Reissue 2016). Thus, Nollett's sentences come within the statutory limits.

[9,10] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. It is within the discretion of the trial court whether to impose probation or incarceration, and we will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

Nollett was 42 years old at the time of sentencing. His criminal record is minimal and includes traffic offenses and a conviction for theft of services. He was employed as a truckdriver, and all of his previous employers spoke positively about him. He had been with his wife for 13 years. She had two children from a previous marriage, including A.V., and she and Nollett had a child together.

Nollett underwent a sexual offense risk assessment as part of the presentence investigation. He was estimated to be "at moderate risk range for re-offense." The report noted that if he is able to admit to the offense and successfully complete treatment, his risk would reduce. On testing, he was defensive about expressing interest in sex, which suggested that he was trying to "look good sexually" and perhaps to convince the evaluator that since he has little interest in sex, he has no sexual problems. His testing results provided minimal information due to his high level of defensiveness. The report states that if Nollett can be motivated for treatment and open up about his offense, he would potentially be a good

candidate for treatment, and that his prognosis was fair but would improve if he was able to admit the offense and accept help. However, his current denial of the offense will be a barrier to treatment.

At sentencing, the district court indicated that it read and considered the information contained in the PSR. The court also considered the statutorily required factors and noted Nollett's limited criminal history. The court also noted that the mental health practitioner who completed the sexual offense risk assessment determined that Nollett was defensive and trying to manipulate the test results. The court highlighted the circumstances of the offense and the fact that Nollett continues to maintain his innocence but observed that his claim is belied by the polygraph test and the results of DNA testing. Ultimately, the district court concluded that Nollett was not a suitable candidate for probation, because placing him on probation would diminish the seriousness of the offense and promote disrespect for the law.

Nollett made the same arguments at the sentencing hearing that he makes here. There is no indication that the court did not consider the mitigating factors that Nollett highlights or that it considered any inappropriate sentencing factors. It is within the court's discretion to sentence a defendant to incarceration as opposed to probation, and the court explained its reasoning for doing so. See *State v. Wills, supra*. We therefore find no abuse of discretion in the sentences imposed.

### CONCLUSION

We conclude that the district court did not abuse its discretion in denying Nollett's motion to withdraw his pleas or in any respect regarding the sentences imposed. We therefore affirm.

AFFIRMED.